J-A20026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRES CEJA | : | No. 623 MDA 2022 |

Appeal from the Order Entered April 8, 2022
In the Court of Common Pleas of Lancaster County
Criminal Division at CP-36-CR-0001939-2021

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                **FILED: OCTOBER 3, 2023**

The Commonwealth of Pennsylvania appeals from the order granting the motion of Andres Ceja (Defendant) and suppressing evidence recovered from Defendant's car.[1]  After careful review, we reverse and remand.

The suppression court recounted the following evidence:

Officer [Robert] Burns was stopped in his marked patrol vehicle at the intersection of South Lime Street and East State Street in Quarryville, Lancaster County, Pennsylvania, when he witnessed a black Honda on East State Street making a right-hand turn onto South Lime Street.  Suppression Transcript pg. 11; 21-24.  Officer Burns observed that the driver's side headlight of the Honda was inoperable, as well as having blue neon ornamental lighting in the headlights as well.  Suppression Transcript pgs. 11-12; 24-2.  Officer Burns subsequently initiated a traffic stop and [made

_____

* Former Justice specially assigned to the Superior Court.

[1] The Commonwealth has certified that the order will terminate or substantially handicap the prosecution.  **See** Pa.R.A.P. 311(d).

contact with] the driver, [Defendant].    Suppression Transcript pgs. 12; 9-10, 14; 22-25.

Upon [contacting Defendant], Officer Burns testified that he detected a "strong odor of marijuana emanating from inside of the vehicle, as well as that the inspection[ sticker] appeared to be placed in the window from another vehicle."    Suppression Transcript, pg. 16; 9-14.  …  [T]he remnants of a marijuana cigarette, known as a "roach," could be seen in plain view in the passenger side door pocket.    Affidavit of Probable Cause for Search Warrant ¶ 7.  Officer Burns further testified that the VIN number on the inspection stickers did not match the VIN plate on the black Honda, confirming the inspection stickers came from a different vehicle.  Suppression Transcript pg. 17; 2-4.  Upon being asked to produce a vehicle registration or valid [proof of] insurance for the vehicle, [Defendant] was unable to produce either document.    Suppression Transcript pg. 17; 9-16.  [Defendant] indicated to Officer Burns that the vehicle was not registered, as he had just purchased the vehicle to flip it and had not gotten the vehicle legally registered yet.    Suppression Transcript, pg. 17; 17-21.  Officer Burns further noted in his testimony that the vehicle tag on the black Honda is what is known as a "dead tag" meaning that the Honda's tag was no longer valid and was registered to the [previous] owner of that vehicle. Suppression Transcript pg. 18; 3-5.

Suppression Court Opinion, 8/8/22, at 1-2.

Because Officer Burns had detected the odor of marijuana inside the vehicle, he began to question Defendant.

Officer Burns asked [Defendant] whether [] he was prescribed medical marijuana or had a medical marijuana card, to which [Defendant] answered that he did not possess a medical marijuana card.  Suppression Transcript pg. 18; 6-17.  This conversation took place to the rear of [Defendant's] vehicle near the vehicle's trunk.  Suppression Transcript pg. 18; 11-13. At this point, Officer Burns asked [Defendant] if he had marijuana in the vehicle, to which [Defendant] replied that he did not.  Suppression Transcript pg. 18; 18-23.  Officer Burns subsequently requested [Defendant's] consent to search the vehicle; this request was denied by [Defendant].  Suppression Transcript pgs. 18-19; 24-3.

Officer Burns then asked [Defendant] if he had any prior drug arrests on his record, and [Defendant] responded that he had been arrested in the past for marijuana violations. Suppression Transcript pg. 19; 5-8. [Officer] Burns then testified that, at this point, he noticed the odor of marijuana was also "very strong to the rear of the vehicle." Suppression Transcript pg. 19; 9-11. Upon putting his face towards the trunk area of the vehicle near the seams of the vehicle, Officer Burns stated that the odor of marijuana was "extremely strong" from there. Suppression Transcript pg. 19; 9-13. At this point, Officer Burns advised [Defendant] that the black Honda was going to be secured and towed from the scene[.] Suppression Transcript pg. 19; 14-16. Officer Burns testified that he intended to secure the vehicle for the purpose of preserving evidence and—noting that because of the (1) odor of marijuana, (2) the lack of a medical marijuana card, and (3) [Defendant's] previous arrests for marijuana violations—that he intended to apply for a search warrant. Suppression Transcript pg. 19; 17-24.

[Defendant's] vehicle was then towed to the Quarryville Police Station, where it was secured in a garage bay and monitored by video during the duration of its seizure. Suppression Transcript pg. 20; 6-20. Officer Burns then contacted Officer [Aaron] Haun, the affiant in this case, and requested that he obtain a search warrant in the morning for the vehicle, which Officer Haun did obtain. Suppression Transcript pgs. 20-21; 23-3. Officer Haun, upon searching the vehicle, recovered six large vacuum seal[-]style bags in the trunk containing approximately 665 grams of marijuana. Suppression Transcript pg. 21; 16-24. Additionally, a large vacuum sealer, a small digital scale, a small clear glassine baggie, and cotton balls were recovered from the backseat of the vehicle. Suppression Transcript pgs. 21-22; 25-3.

Suppression Court Opinion, 8/8/22, at 1-3 (italics omitted).

On April 1, 2021, the Commonwealth charged Defendant with possession with intent to deliver, possession of a controlled substance,

possession of drug paraphernalia, and violations of the Motor Vehicle Code.[2]

On October 19, 2021, Defendant filed an omnibus pre-trial motion to suppress physical evidence. Defendant argued his "stop, arrest and [the] subsequent search warrant were all unlawful and obtained in violation of the United States Constitution, the Pennsylvania Constitution, Pennsylvania Law, and the Pennsylvania Rules of Criminal Procedure." Pre-trial Motion, 10/19/21, at 2.

The court held a suppression hearing on April 6, 2022. At the beginning of the hearing, the Commonwealth asked Defendant's counsel (Counsel) to clarify the "exact legal theory upon which you're proceeding." N.T., 4/6/22, at 4. Counsel replied:

> My understanding is that the – the cop is saying the headlight is out. I don't see any evidence – haven't seen any evidence that the headlight was out. My understanding is that he can testify to that.
>
> Second of all – that would be the probable cause to pull him over.
>
> More importantly, Judge, once he's pulled over[,] the smell of marijuana was the reason that was stated by the officer as to towing the vehicle and applying for the search warrant. Under case law, I don't believe that – just the smell of marijuana is no longer enough to apply for a search warrant to search the car.

*Id.* at 4-5.

---

[2] 35 P.S. §§ 780-113(a)(30), (16), and (32); 75 Pa.C.S.A. §§ 1301(a), 1786(f), 4303(a), and 4730(a)(1).

At the conclusion of the hearing, Counsel argued Officer Burns lacked probable cause to stop the car because the headlight was operable. *Id.* at 31-32. However, after reviewing photographs of the car, the suppression court found, "clearly that headlight is out on that side." *Id.* at 32. Counsel then stated, "the main thrust of my argument today would be the plain smell doctrine. Under case law … plain smell alone is not enough to apply for a search warrant to tow the car." *Id.* at 33. Counsel never challenged Officer Burns' credibility or his account of the interaction in asserting that the Commonwealth did not establish probable cause. *Id.* at 32-33.

The suppression court granted Defendant's suppression motion from the bench. The court stated, "there's not enough here to make [the court] comfortable with the idea that probable cause existed to take the steps to actually search the areas of the vehicle that this contraband was located within." *Id.* at 40. The court did not address whether the initial seizure of the vehicle was supported by probable cause.

The Commonwealth timely filed a notice of appeal and court-ordered concise statement pursuant to Pa.R.A.P. 1925(b). The suppression court issued a Pa.R.A.P. 1925(a) opinion explaining that it granted suppression because Officer Burns lacked probable cause to seize the vehicle for the purpose of obtaining a search warrant. Suppression Court Opinion, 8/8/22, at 4-10.

The Commonwealth raises the following issues for review:

I.  Whether the [suppression] court erred in finding that the affidavit of probable cause was insufficient to support the search warrant?

II.  Whether the Commonwealth waived any challenge to the [suppression] court's decision on the initial seizure of the vehicle?

III.  Whether the [suppression] court erred in finding that there was no probable cause to temporarily secure [Defendant's] vehicle for the [purpose] of obtaining a search warrant?

Commonwealth Brief at 4.

Preliminarily, we recognize:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Vetter*, 149 A.3d 71, 75 (Pa. Super. 2016) (citations omitted).

In its first issue, the Commonwealth argues that the affidavit to obtain the warrant to search Defendant's car was supported by probable cause. Commonwealth's Brief at 13-16. The Commonwealth contends there was probable cause because: (1) Officer Burns detected a strong odor of marijuana coming from the vehicle; (2) Defendant admitted he did not have a medical marijuana card; (3) the remnants of a marijuana cigarette were in plain view;

and (4) Defendant admitted to prior arrests for drug offenses, which were confirmed by a review of Defendant's criminal history.  *Id.* at 15.

"A search warrant must be supported by probable cause."  U.S. Const. amend. IV; Pa. Const. art. I, § 8.  Probable cause exists "where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted."  *Commonwealth v. Torres*, 177 A.3d 263, 265 (Pa. Super. 2017).

In *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985), our Supreme Court adopted a "totality of the circumstances" test, originally set forth by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983), as the appliable law under the Pennsylvania Constitution.  The Court concluded the "approach is as workable here as in those other areas of criminal procedure where a common-sense, practical approach is indicated."  *Gray*, 503 A.2d at 926.  Under this test:

> the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
>
> ***
>
> It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed.  **In so doing, the reviewing court must accord deference to the**

**issuing authority's probable cause determination[] and must view the information offered to establish probable cause in a common-sense, non-technical manner.**

\*\*\*

[Further, a reviewing court is] not to conduct a *de novo* review of the issuing authority's probable cause determination[; the court's task is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

*Commonwealth v. Torres*, 764 A.2d 532, 537-38, 540 (Pa. 2001) (emphasis added) (citations and quotation marks omitted). Notably, "the affidavit of probable cause must establish a 'substantial nexus' between the [place to be searched] and [the] criminal activity or contraband sought to permit the search[.]" *Commonwealth v. Mendoza*, 287 A.3d 457, 463 (Pa. Super. 2022) (citation omitted).

Here, Defendant challenged the finding of probable cause, not the authenticity of the allegations in the affidavit of probable cause. N.T., 8/8/22, at 4-5. Courts in Pennsylvania are not permitted to consider evidence outside the four corners of the warrant in cases where the defendant is challenging the adequacy of the probable cause determination. *See Commonwealth v. Edmunds*, 586 A.2d 887, 891 (Pa. 1991) (reversing denial of suppression where the trial court considered oral testimony of police officers which supplemented an affidavit of probable cause); *see also Commonwealth v. Taylor*, 850 A.2d 684, 687-88 (Pa. Super. 2004) (discussing different

analyses when a defendant is challenging the adequacy of the determination of probable cause versus the authenticity of the information in the affidavit).

In ruling from the bench, the suppression court found the evidence failed to establish probable cause for the search warrant based on discrepancies between Officer Burns' testimony at the suppression hearing, and Officer Haun's statements, as affiant, in the affidavit of probable cause. Suppression Court Opinion, 8/8/22, at 38-39; Affidavit of Probable Cause, 4/1/21, at 1-2. The suppression court's reasoning was contrary to the law and looked beyond the four corners of the warrant. *See Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018) ("At any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in [Rule 203](B)." (citation omitted)).

As its second basis for granting suppression, the court found the only allegation supporting the warrant was the smell of marijuana, which was insufficient to support probable cause under the Pennsylvania Supreme Court's decisions in *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), and *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021). N.T., 4/6/22, at 39-40. However, subsequent case law interpreting *Hicks* and *Barr* have rendered the suppression court's conclusion unsustainable.

"Historically, Pennsylvania courts have held the smell of marijuana alone was sufficient to establish a reasonable suspicion of criminal activity."

*Commonwealth v. Cunningham*, 287 A.3d 1, 9 (Pa. Super. 2022).

Following the passage of the Medical Marijuana Act (MMA),[3] the Pennsylvania

Supreme Court revisited the issue.

In **Hicks**, the Supreme Court considered a claim involving the legal possession of a firearm. The Court observed that a person's possession of a concealed firearm in a public setting is conduct "in which hundreds of thousands of Pennsylvanians are licensed to engage lawfully" and is "an insufficient basis for reasonable suspicion that criminal activity is afoot." **Hicks**, 208 A.3d at 945.

Subsequently, in **Barr**, the Supreme Court stated, "the MMA makes abundantly clear that marijuana no longer is *per se* illegal in this Commonwealth." **Barr**, 266 A.3d at 41. However, the Court clarified that possession of marijuana remains illegal under the Controlled Substance, Drug, Device and Cosmetic Act (CSA)[4] "for those not qualified under the MMA." **Id.**

---

[3] 35 P.S. § 10231.101 *et seq*. The Pennsylvania General Assembly enacted the MMA effective May 17, 2016.

[4] 35 P.S. §§ 780-101 *et seq.* **See also** 35 P.S. § 10231.304(a) ("Except as provided in [the MMA], the use of medical marijuana is unlawful and shall ... be deemed a violation of the [CSA]."). The MMA "create[d] a temporary program for qualified persons to access medical marijuana, for the safe and effective delivery of medical marijuana, and for research into the effectiveness and utility of medical marijuana." **Commonwealth v. Jezzi**, 208 A.3d 1105, 1111 (Pa. Super. 2019) (emphasis and citations omitted). "Outside the MMA, marijuana remains a prohibited Schedule I controlled substance for the general citizenry who are unqualified under the MMA." **Id.** at 1115 (citation
*(Footnote Continued Next Page)*

- 10 -

Our Supreme Court then held "the odor of marijuana **may be a factor, but not a stand-alone one**, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." *Id.* (emphasis added). The Court

> Emphasize[d] that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot. [T]he totality-of-the-circumstances analysis encompasses the consideration of factors that may arguably be innocent in nature.

*Id.* at 41-42.

Recently, this Court applied **Barr** to the issue of whether the smell of marijuana, in combination with other factors, provided sufficient probable cause to support a search warrant. **Commonwealth v. Boyd**, 296 A.3d 1270 (Pa. Super. 2023). In **Boyd**, the defendant was subject to a traffic stop and unsuccessfully sought to suppress evidence resulting from the search of his car pursuant to a search warrant. After discussing **Barr**, we considered the totality of the circumstances presented in the affidavit of probable cause: the police officer who conducted the traffic stop was an experienced officer with specialized training in narcotics investigation; the defendant displayed

_____

omitted). "[T]he General Assembly has not enacted legislation amending the MMA, CSA, or the DUI statutes to remove marijuana from its Schedule I designation under state law." **Commonwealth v. Stone**, 273 A.3d 1163, 1172 (Pa. Super. 2022) (*en banc*) (footnote omitted).

- 11 -

nervous behavior; the car had multiple air fresheners masking the odor of marijuana; and the defendant acknowledged he did not possess an MMA card. *Id.* We concluded that when considered together, the totality of the facts "create[d] sufficient suspicion of criminal activity to create probable cause to search for contraband." *Id.* at 1278.

Instantly, the affidavit of probable cause described Officer Burns and Officer Haun as experienced police officers with extensive training in narcotics. Affidavit of Probable Cause, 4/1/21, at 1-2. Officer Burns served as a member of a county-wide Drug Task Force for six years. *Id.* at 1. Based upon his experience, Officer Haun averred that drug users often hide contraband in secure locations in a car (like the trunk) and build "stash" places within the car. *Id.* The affidavit explained that the initial traffic stop was based on the car having an inoperable headlight. *Id.* The affidavit also mentioned the strong odor of marijuana coming from the car, and Defendant not having an MMA card. *Id.* at 2. In addition, "[t]he remnants of a marijuana cigarette … [could] be seen in plain view in the passenger side door pocket." *Id.* Lastly, "[a] review of [Defendant's c]riminal [h]istory revealed multiple prior arrests for drug offenses[.]" *Id.*

Based on the totality of these circumstances, the information contained in the four corners of the affidavit established "sufficient suspicion of criminal activity to create probable cause to search for contraband." *Boyd*, 296 A.3d at 1278. Further, there exists a substantial nexus between the allegations in

the affidavit and the search of the entire vehicle.  Accordingly, we reverse the grant of suppression.  **See Commonwealth v. Arias**, 286 A.3d 341, 348-49 (Pa. Super. 2022) (applying **Barr** and concluding police officer possessed sufficient probable cause for a **warrantless** search of a vehicle, where the car had been in a high-crime area for an extended period of time; the male driver had not exited the car during that time; the vehicle's license plate was registered to a different car owned by a woman; and an odor of marijuana was coming from the vehicle).

Next, in its second issue and third issues, the Commonwealth challenges the suppression court's determination in its Rule 1925(a) opinion that there was insufficient probable cause to justify the seizure of Defendant's car while obtaining the search warrant.  Commonwealth's Brief at 17-21.

In its second issue, the Commonwealth addresses the question of whether its third issue is preserved for our review.  The Commonwealth acknowledges it did not raise the third issue in its Rule 1925(b) statement, but argues we should excuse the deficiency because the suppression court did not "address the propriety of the initial seizure of [Defendant's] vehicle [in its bench ruling]."  **Id.** at 17.  The Commonwealth emphasizes that the "first time the initial seizure was deemed unlawful was in the [suppression] court's 1925(a) Opinion."  **Id.**

It is axiomatic that "any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review."  **Commonwealth v. Bonnett**,

239 A.3d 1096, 1106 (Pa. Super. 2020) (citing **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998)). Rule 1925(b) mandates that the statement "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii).

However, this Court has recognized:

If the reasons for the ruling of the [c]ourt are vague, then an appellant is forced to file an incomplete Rule 1925(b) statement and there is no violation of Rule 1925(b). Just as the trial judge cannot be made to guess what an appellant is complaining of on appeal, an appellant cannot be made to guess what the trial judge is thinking in his or her ruling.

**Commonwealth v. Zheng**, 908 A.2d 285, 288 (Pa. Super 2006) (italics omitted); **see also Hess v. Fox Rothschild, LLP**, 925 A.2d 798, 804 (Pa. Super. 2007) (explaining when an appellant cannot ascertain the basis for a trial court's rationale, it is not appropriate to find Rule 1925 waiver). Upon review, we agree with the Commonwealth that under the circumstances, waiver is not appropriate. We therefore consider the Commonwealth's third issue.

In its third issue, the Commonwealth argues the suppression court erred in finding that Officer Burns "relied solely on the smell of marijuana as the basis for seizure of [Defendant's] vehicle." Commonwealth's Brief at 18 (quoting Suppression Court Opinion, 8/8/22, at 10). The Commonwealth maintains that Officer Burns relied on multiple factors in suspecting criminal

activity, which together were sufficient to support a finding of probable cause. *Id.* at 18-21.

In *Commonwealth v. Gillespie*, 821 A.2d 1221 (Pa. 2003), our Supreme Court adopted the standard enunciated by the United States Supreme Court in *Illinois v. McArthur*, 531 U.S. 326, 328 (2001), for determining when "police may secure the residence of an individual by having him wait outside his home to preserve the loss of evidence while a warrant is diligently sought." *Gillespie*, 821 A.2d at 1227. The factors to be considered are whether:

> (1) the police had probable cause to believe the suspect's home contained evidence of a crime and contraband; (2) the police had good reason to fear that, unless restrained, the defendant would destroy the evidence before they returned with a warrant; (3) the police made reasonable efforts to balance the interests of law enforcement with those of privacy; and (4) the restraint imposed was limited in time and scope.

*Id.* In *Commonwealth v. Kubis*, 978 A.2d 391 (Pa. Super. 2009), this Court extended the *McArthur* factors to apply to motor vehicles, "where the expectation of privacy is much lower." *Kubis*, 978 A.2d at 394.

The suppression court did not address the *McArthur* factors. Instead, it applied *Barr* to find that the seizure of Defendant's vehicle was not supported by probable cause. Suppression Court Opinion, 8/8/22, at 6. As discussed above, subsequent caselaw interpreting *Barr* does not support the suppression court's conclusion that the police lacked probable cause. *See Boyd*, 296 A.3d at 1278; *Arias*, 286 A.3d at 348-49.

- 15 -

In **Kubis**, we held that the **McArthur** factors were met where

> police had a reasonable fear that [the a]ppellant, knowing that he was under investigation, would seek to destroy the evidence were it not seized. [The] police balanced [the a]ppellant's privacy interest with the Commonwealth's interest in obtaining clearly incriminating evidence by seizing the vehicle, in which [appellant] had a lesser expectation of privacy than in his home, as well as obtaining a warrant before searching the vehicle. [And] the scope of the seizure was limited; police seized [the a]ppellant's vehicle, not his person or his place of dwelling.

**Kubis**, 978 A.2d at 395.

We see no distinction between this case and **Kubis**. Therefore, we conclude that the suppression court erred in granting Defendant's suppression motion based on lack of probable cause to seize the car.

For the above reasons, we reverse the grant of suppression and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/3/2023

- 16 -